**REDACTED PUBLIC VERSION**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TEXARKANA DIVISION

| | | |
|---|---|---|
| HITACHI MAXELL, LTD., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 5:16-CV-00178-RWS |
| HUAWEI DEVICE USA, INC., and HUAWEI DEVICE CO., LTD., | § § § § | **(LEAD CASE)** |
| Defendants. | § § | |
| | § | |
| HITACHI MAXELL, LTD., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 5:16-CV-00179-RWS |
| ZTE CORPORATION and ZTE USA INC., | § § § | |
| Defendants. | § § § | |

## DEFENDANTS ZTE USA INC.'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT U.S. PATENT NO. 6,408,193

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, Defendant ZTE

(USA) Inc. ("Defendant" or "ZTE") hereby move for summary judgment on non-infringement

with respect to U.S. Patent Number 6,408,193 (the '193 Patent) as set forth below.

## I.   STATEMENT OF ISSUES TO BE DECIDED

1.   Whether ZTE is entitled to summary judgment of non-infringement because

plaintiff has failed to show sufficient evidence to support a finding of infringement of the '193

patent.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

1.   Plaintiff has asserted claims 1, 6 and 7 of the '193 Patent.

2.   The Parties have agreed that the ZTE ZMax 2 is representative of the Accused

Products with respect to the '193 Patent.

## III.   LEGAL STANDARD

Summary judgment is proper when "there is no genuine issue as to any material fact" and

"the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists if "the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Summary judgment is as appropriate in a patent case as

it is in any other case." *Desper Prod., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332 (Fed. Cir.

1998) (quoting *C.R. Bard, Inc. v. Advanced Cardiovascular, Inc.*, 911 F.2d 670, 672 (Fed. Cir.

1990)).

## IV.   ISSUE 1: PLAINTIFF HAS NOT AND CANNOT SHOW SUFFICIENT EVIDENCE TO SUPPORT A FINDING OF INFRINGEMENT OF THE '193 PATENT

Maxell lacks evidence that the Accused Devices infringe the '193 Patent because it

cannot show that at least two required claim elements are met.

4810-9981-1921.v3

### A.    Maxell's Expert Fails to Provide an Opinion of Infringement under the Court's Claim Construction Order

Maxell's expert, Dr. Michael Caloyannides, has not provided an opinion of infringement under the Court's Claim Construction Order. The Court's final construction did not adopt either party's proffered construction and Dr. Caloyannides allegedly applied the Court's preliminary claim construction, not the Court's final construction.

| ZTE Proposed Construction | Maxell Proposed Construction | Court's Preliminary Construction | Court's Construction |
|---|---|---|---|
| '193 patent, claims 1, 7: "variable amplitude amplifier [Term 28] | | | |
| "device that includes a first-stage amplifier, two filters, an up-converter, and a second-stage amplifier" | Plain and ordinary meaning | "an amplifier whose output amplitude may be varied to provide a variable gain in response to a control signal" | "an amplifier whose output amplitude may be varied and that provides a variable gain in response to a control signal" |

Under the Court's final construction, variable amplitude amplifier is defined as "an amplifier whose output amplitude may be varied and that provides a variable gain in response to a control signal." The claims further require that the "controller controls a gain of said variable amplitude amplifier … using a set of bias and gain data stored in said memory" (claim 1) or "using a function defining a relation between bias data and gain data stored in said memory" (claim 7).   Thus, the construction and claim language makes it clear that the gain of the variable amplitude amplifier has to be modified based on a control signal and that control signal has to be from the controller and based on a set of bias and gain data stored in memory or a function defining a relation therebetween.

The preliminary construction could allow a control signal to directly control the output of the amplifier, which in turn would control the gain. The final construction, within the scope of the claim makes it clear that the gain is directly controlled by the control signal.

But, Dr. Caloyannides failed to consider such requirements.  Instead, he relied upon a theory where what he labelled the "variable amplitude amplifier" provides automatic gain control

4810-9981-1921.v3

("AGC").  In his theory, the variable amplitude amplifier is on one chip (the transceiver WTR4905 chip) and the controller is on a different chip (the Chipset & RFFE I/Fs" within the baseband chip MSM8916). (Cunningham Decl., Ex. F, Expert Report of Michael Caloyannides, Ph.D. Regarding the Infringement of U.S. Patent Nos. 6,408,193 and 6,748,317 ("Caloyannides Rep.") at ¶128). Thus, under the final and actual claim construction, the control signal would have to be issued from the MSM8916 baseband chip and delivered to the variable amplitude amplifier on the transceiver chip WTR4905.  But in AGC, the amplifier generates its own control signal based on its output.  Thus, the control signal would be issued from the transceiver WTR4905 chip; not the baseband chip MSM8916.  Dr. Caloyannides theory appeared to have relied on his potentially loose interpretation of the preliminary construction to suggest that this theory could be supported.  However, this is clearly wrong under the Court's final construction.

Furthermore, the AGC theory necessarily also means that the control signal is not based on "a set of bias and gain data stored in said memory" (as required by claim 1) or "using a function defining a relation between bias data and gain data stored in said memory" as recited in claim 7.   Instead, it is based on the output of the AGC.

When questioned at deposition about the difference in claim constructions, Dr. Caloyannides testified ████████████████████████████████████████████ ████████████████████████████████████████████His conclusory statements fail to address how the change in the constructions requirement, that the gain be controlled by the control signal, continues to support his opinions.



3

(Cunningham Decl., Ex. I, Caloyannides Dep. Tr. at 69:7-17).

Dr. Caloyannides points to Qualcomm MSM8916 baseband chip and alleged that the controller is the "Chipset & RFFE I/Fs" within the baseband chip MSM8916 and it connects to the transceiver WTR4905 which contains the variable amplitude amplifier. (Cunningham Decl., Ex. F, Caloyannides Rep. at ¶128).  However, there is no evidence that the controller through Radio Frequency Front End ("RFFE") controls the variable gain amplifier in the WTR board. (Cunningham Decl., Ex. L, Expert Report of Dr. Zhi Ding Regarding Non-Infringement of U.S. Patent No. ("Ding Rep.") at ¶122).

Additionally, Dr. Caloyannides testified that ███████████████████████ ██████ (Cunningham Decl., Ex. I, Caloyannides Dep. Tr. at 116:1-20). Dr. Caloyannides only testified ███████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████ *Id.* at 151:3-155:20. Moreover, Dr. Caloyannides testified ███████████████████████████████ ██████████████████████████████████████████████████ ████████████████ *Id.* at 108:11-109:14.

Dr. Caloyannides testified that ████████████████████████████ ██████████████████████████████████████ *Id.*



4810-9981-1921.v3



(Cunningham Decl., Ex. I, Caloyannides Dep. Tr. at 172:11-173:23).

In addition, Dr. Caloyannides and the software "experts" appeared to have reviewed the wrong source code. Dr. Caloyannides admitted that ██████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████ *Id* at 174:13-176:24.

**B.    Maxell's Expert Misinterpreted the Claim and Provides No Evidence that the Accused Device Uses Stored Gain Data for the Variable Amplitude Amplifier**

Claim 1 of the '193 Patent recites "said controller controls a gain of said variable amplitude amplifier and a bias condition of said power amplifier using a set of bias and gain data stored in said memory." The plain and ordinary meaning of the claim requires the gain data from memory be used to set the gain for the variable amplitude amplifier and the bias condition data from memory be used to set the bias for the power amplifier. Similarly, claim 7 of the '193 Patent recites "said controller controls a gain of said variable amplitude amplifier using a function defining a relation between bias data and gain data stored in said memory, and said maximum power detector controls an output power of said power amplifier."

Dr. Caloyannides, misinterpreted the claims. The claim limitations clearly involves two amplifiers, however, Dr. Caloyannides testified that ██████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████ (Cunningham Decl., Ex. I, Caloyannides

4810-9981-1921.v3

Dep. Tr. at 130:3-12; 131:13-132:3; 141:7-142:17). ███████████████████

████████████████████████████████████████████████████████████

███████████████ *Id*. at 130:13-133:20. ███████████████████████

███████



FIG. 4

As a result, Dr. Caloyannides fails to show that the controller controls the gain of the variable amplitude amplifier using gain data and bias of the power amplifier using bias data stored in the memory. Dr. Caloyannides, in his infringement expert report, only purports to provide evidence for the bias condition for the power amplifier. ████████████████

████████████████████████████████████████████████████████

██████ *d*. at 111:3-16.

## V.    CONCLUSION

For the foregoing reasons, ZTE submits that it is entitled to summary judgment that the '193 Patent is not infringed.

4810-9981-1921.v3

**REDACTED PUBLIC VERSION**

Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

Dated:  March 2, 2018                   By: */s/ Nicole S. Cunningham*
Callie A. Bjurstrom (CA Bar No. 137816)
Steven A. Moore (CA Bar No. 232114)
Nicole S. Cunningham (CA Bar No. 234390)
Matthew R. Stephens (CA Bar No. 288223)
501 West Broadway, Suite 1100
San Diego, CA 92101
Phone: (619) 234-5000
Fax: (619) 236-1995
Attorneys for Defendant ZTE (USA) Inc.

4810-9981-1921.v3

**REDACTED PUBLIC VERSION**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 2, 2018, a true and correct copy of the foregoing was

served on Plaintiff's counsel via electronic mail.

*/s/ Nicole S. Cunningham*
Nicole S. Cunningham

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I certify that the foregoing document is authorized to be filed under seal pursuant to the

Protective Order entered in this case.

*/s/ Nicole S. Cunningham*
Nicole S. Cunningham

4810-9981-1921.v3